**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

OLD TOWNE DEVELOPMENT GROUP,     CIVIL ACTION
L.L.C.

VERSUS     NUMBER 09-224-FJP-CN

J. DAVID MATTHEWS

**RULING**

This matter is before the Court on the Motion for Partial Summary Judgment on the issue of Citizenship filed by the plaintiff.[1] The defendant opposes the motion.[2] For the reasons which follow, the Court denies the plaintiff's motion and dismisses this case for lack of subject matter jurisdiction without prejudice.

**I. Factual Background**

This action involves the question of whether there was a default on a promissory note. However, the issue of subject matter jurisdiction has been raised based on a dispute between the parties over the defendant's citizenship. Because the parties must be diverse for this Court to have jurisdiction under 28 U.S.C. § 1332, the Court must determine if it has subject matter jurisdiction to hear the remaining substantive claims.

---

[1] Rec. Doc. No. 15.

[2] Rec. Doc. No. 55.

Plaintiff claims the defendant is a citizen of Georgia who has not "officially" moved to Louisiana according to his own deposition testimony of November 17, 2008. Thus, plaintiff contends diversity jurisdiction is present in this case for several reasons: the defendant testified in a 2008 deposition that his "primary address" remains in Barnesville, Georgia; the defendant felt strongly enough about his ties to Georgia that he corrected the attorney when he asked when the defendant had moved to Louisiana; there is no objective evidence that from 11/18/08 until 4/17/09, the defendant changed his domicile to Louisiana; the defendant cannot make the showing required by Fifth Circuit caselaw that he abandoned Georgia for Louisiana; the defendant has never applied for a Louisiana driver's license; the defendant owns a home in Georgia and continues to claim a homestead exemption at this address when the house he owns in Baton Rouge is not subject to a homestead exemption; he has and maintains a Georgia driver's license.[3]

The plaintiff also asserts that the defendant is registered to vote in Georgia rather than Louisiana; the defendant has a boat, multiple vehicles, and at least two trailers registered in Georgia, and most of his movable property is registered in Georgia, with

---

[3]Plaintiff argues that, in fact, it is a violation of La. R.S. 32:404.1 to become a Louisiana resident in 2005, as he states now he did, and fail to obtain a Louisiana commercial driver's license. If his residency statements are true, he was required by law to obtain a Louisiana driver's license within 30 days after establishing a domicile in this state.

only a leased BMW being registered in Louisiana; and the defendant owns a number of Georgia business entities. Plaintiff alleges that while he claims to be working in Louisiana, the defendant is in fact doing business through a wholly owned Georgia entity. Plaintiff also argues that the defendant operates bank accounts both locally and out-of-state; that the defendant's statements about his family residing in Baton Rouge are misleading since he has three adult sons from a prior marriage, two of which live in Georgia while one lives in Zachary, Louisiana. Plaintiff contends there are no other children in defendant's home. The defendant has both Georgia and Louisiana real estate licenses. A Louisiana entity owned by the defendant has a Louisiana contractor's license, but the defendant does not.

Finally, plaintiff contends the defendant has made numerous statements in filings and public records since 2005 which conflict with his affidavit and confirm that he is a resident of Georgia.[4] Thus, plaintiff contends the defendant cannot rebut the presumption of his Georgia domicile.

The defendant contends he moved to Louisiana in 2004 with the intent to remain here indefinitely, and any ties to Georgia are minimal and do not override his Louisiana citizenship. He supports

---

[4]See Quit Claim Deed executed 1/20/06 declaring he is a resident of GA; Security Deed executed 1/20/06 declaring he will make the Barnesville, GA residence his home for at least one year; and mortgage on the Baton Rouge home - signed 12/15/06, declaring his permanent mailing address is the Barnesville address.

his position with the following assertions: the defendant intends to remain indefinitely in Louisiana where he has lived continuously since 2004; defendant's Perkins Road home is secured by a Bancorp South mortgage and insured with a State Farm agent in Baton Rouge, and he has resided at no other house since he moved in on December 12, 2006; the vast majority of defendant's personal property and all of his personal belongings are located in this home; the defendant is married to a Louisiana native and one of the defendant's sons has lived and worked with him since 2006 while another son moved from Georgia to Louisiana in 2009 to do the same; all of the defendant's social, religious and community activities are in Louisiana; the defendant attends church services and a Bible study at a Baton Rouge local church; the defendant's personal vehicle is registered in Louisiana, and auto insurance for both his and his wife's vehicles are with a Baton Rouge agent.

The defendant claims he was told by the Louisiana Office of Motor Vehicles that he did not need a Louisiana driver's license as long as he held a valid license from another state. The defendant did obtain a commercial driver's license from Louisiana in 2009; the defendant obtained a passport in 2007 which lists his address on Perkins Road in Baton Rouge, Louisiana; the defendant pays Louisiana personal income taxes, and on his 2006 federal tax returns, he listed his address on South Trent Jones Drive, Baton Rouge, Louisiana. Furthermore, the defendant's office address has

been on South Glenstone in Baton Rouge since 2005; his W-2s and other employment records list his address as 19341 Old Perkins Road East, Baton Rouge, Louisiana; the defendant's banking statements will show the vast majority of his time and purchases made are in Louisiana; his personal telephone number is with Cox in Louisiana; all personal mail, bills, correspondence, are received and paid from his Perkins Road home; the defendant's personal physician and specialists, whom he sees regularly, are in Baton Rouge, Louisiana; the defendant has numerous business contacts in Louisiana as set forth in detail in his memorandum in opposition; the defendant's greatest involvement is with Shearwater Communities, LLC, a real estate development company whose activities have been solely in Louisiana since its inception in 2006.

## II. Law and Analysis

There is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court.[5] "Reside" has been interpreted to mean more than to be temporarily living in the state; it means to be "domiciled" there. Thus, to be a citizen of a state within the meaning of the diversity provision, a natural person must be both (1) a citizen of the United States, and (2) a domiciliary of that state. Federal common law, not the law of any state, determines whether a person

---

[5]*Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996), citing *Strain v. Harrelson Rubber Company*, 742 F.2d 888, 889 (5th Cir. 1984); 1 J. Moore, Moore's Federal Practice § 0.71[5.-1](1996).

is a citizen of a particular state for the purposes of diversity jurisdiction.[6]

Consistent with general principles for determining federal jurisdiction, diversity of citizenship must exist at the time the action is commenced.[7] In cases removed from state court, diversity of citizenship must exist both at the time of filing in state court and at the time of removal to federal court.[8] If diversity is established at the commencement and removal of the suit, it will not be destroyed by subsequent changes in the citizenship of the extant parties.[9]

In making a jurisdictional assessment, a federal court is not limited to the pleadings; it may look to any record evidence, and may receive affidavits, deposition testimony or live testimony concerning the facts underlying the citizenship of the parties.[10] The court has wide, but not unfettered, discretion to determine

---

[6]*Id.,* citing  1 J. Moore, Moore's Federal Practice § 0.74[1](1996); e.g., *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir.) *cert. denied*, 419 U.S. 482, 95 S.Ct. 74, 42 L.Ed.2d 70 (1974).

[7]*Id.,* citing *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830, 109 S.Ct. 2218, 2221, 104 L.Ed.2d 893 (1989).

[8]*Id.* at 249, citing *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 776 (7th Cir. 1986).

[9]*Id.,* citing *Smith v. Sperling*, 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1114 n. 1, 1 L.Ed.2d 1205 (1957); *Mollan v. Torrance*, 22 U.S. (9 Wheat.) 537, 539, 6 L.Ed. 154 (1824);  1 J. Moore, Moore's Federal Practice § 0.74[1](1996).

[10]*Id.,* citing *Jones v. Landry*, 387 F.2d 102 (5th Cir. 1967); 1 J. Moore, Moore's Federal Practice § 0.74[1](1996).

what evidence to use in making its determination of jurisdiction.[11] A United States citizen who is domicile in a state is a citizen of that state. Thus, with few exceptions, state citizenship for diversity purposes is regarded as synonymous with domicile.[12]

A change in domicile typically requires only the concurrence of : (1) physical presence at the new location and (2) an intention to remain there indefinitely;[13] or, as some courts articulate it, the absence of any intention to go elsewhere.[14] Thus, a person who has the clear intent to change domicile does not accomplish the change until he is physically present in the new location with that intent. On the other hand, mere presence in a new location does not effect a change of domicile; it must be accompanied with the requisite intent. In most cases, the difficult issue is not presence but whether the intent to change domicile can be shown.[15]

A person's domicile persists until a new one is acquired or it

---

[11] *Id.*, citing *Ray v. Bird & Son & Asset Realization Co.*, 519 F.2d 1081 (5th Cir. 1975).

[12] *Id.*, citing *Rodriguez-Diaz v. Sierra-Martinez*, 853 F.2d 1027 (1st Cir. 1988); 1 J. Moore, Moore's Federal Practice § 0.74[3] n. 3.

[13] *Id.* at 250, citing 13B Wright-Miller-Cooper, Federal Practice and Procedure § 3613 (1984), citing, *inter alia*, *Stine v. Moore*, 213 F.2d 446 (5th Cir. 1954); *Paudler v. Paudler*, 185 F.2d 901 (5th Cir.) *cert. denied*, 341 U.S. 920, 71 S.Ct. 742 (1950).

[14] *Id.*, citing 13B Wright-Miller-Cooper § 3613 n. 3.

[15] *Id.*, citing 1 J. Moore, Moore's Federal Practice § 0.74[3.-1](1996).

is clearly abandoned.[16] There is a presumption in favor of the continuing domicile which requires the party seeking to show a change in domicile to come forward with enough evidence to that effect to withstand a directed verdict.[17] While some opinions seem to imply that the burden of persuasion rests with the party attempting to show a change of domicile, this is an overstatement. The proper rule is that the party attempting to show a change assumes the burden of going forward on that issue. **The ultimate burden on the issue of jurisdiction rests with the plaintiff or the party invoking federal jurisdiction.**[18]

In determining a litigant's domicile, the court must address a variety of factors. No single factor is determinative. The court should look to all evidence shedding light on the litigant's intention to establish domicile. The factors may include the places where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his

---

[16] *Id.*, citing *Lew v. Moss*, 797 F.2d 747 (9th Cir. 1986); *Mas v. Perry*, 489 F.2d 1396.

[17] *Id.*, citing *Lew v. Moss*, 797 F.2d at 751.

[18] *Id.*, citing 1 J. Moore, Moore's Federal Practice § 0.74[3.-3], n. 8,(1996)(citing *Lew v. Moss*, 797 F.2d at 751; *Slaughter v. Toye Bros. Yellow Cab Co.*, 359 F.2d 954, 956 (5th Cir. 1966); *Gregg v. Louisiana Power & Light Co.*, 626 F.2d 1315 (5th Cir. 1980))(emphasis added).

family.[19]  A litigant's statement of intent is relevant to the determination of domicile, but it is entitled to little weight if it conflicts with the objective facts.[20]

Most courts regard domicile as presenting a mixed question of law and fact.[21]  Nevertheless, in practice, the district court's determination of domicile is reviewed on appeal as a question of fact; it will be upheld unless "clearly erroneous."[22]

This Court previously addressed this very issue in *Computer People, Inc. v. Computer Dimensions International*[23] wherein this Court noted that "[d]omicile depends on the concurrence of two factors: residence and the intent to reside indefinitely in a particular place.[24]  The place where a person lives is taken to be his proper domicile until the evidence establishes the contrary.[25]

---

[19] *Id.* at 251 (citations omitted).

[20] *Id.*, citing *Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 556 (5th Cir. 1985); *Hendry v. Masonite Corp.*, 455 F.2d 955, 956 (5th Cir.) *cert. denied*, 409 U.S. 1023, 93 S.Ct. 464, 34 L.Ed.2d 315 (1972).

[21] *Id.*, citing *Village Fair Shopping Center Co. v. Sam Broadhead Trust*, 588 F.2d 431, 433 (5th Cir. 1979).

[22] *Id.*, citing 1 J. Moore, Moore's Federal Practice § 0.74[3.-3] n. 29 and authorities cited therein.

[23] 638 F.Supp. 1293 (M.D. La. 1986).

[24] *Id.* at 1295, citing *Texas v. Florida*, 306 U.S. 398, 424, 59 S.Ct. 563, 576, 83 L.Ed. 817 (1939); *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954).

[25] *Id.*, citing *District of Columbia v. Murphy*, 314 U.S. 441, 455, 62 S.Ct. 303, 309-11, 86 L.Ed. 329 (1941).

The factors to be considered in determining domicile, as set forth by the Supreme Court in *Murphy*, include the following:

1. Whether or not an individual votes where he claims domicile;
2. The manner in which an individual lives, taken in connection with his station in life, *i.e.*, whether he rents or buys a home;
3. Whether his family and dependents have moved to the new residence;
4. Whether an individual's belongings have been moved to the new residence;
5. One's relationships with churches, clubs, and investments in the new residence;
6. Whether or not a place of abode is retained in the old state of residence;
7. Whether or not investments in local property or enterprise attach one to the former residence;
8. Whether one retains affiliations with professional, religious, and fraternal life of the former community; and
9. What domicile is claimed for tax purposes.

Other factors which the courts have considered include the state where one registers his automobile and obtains a driver's

license."[26]

It is clear from the facts and evidence presented by both parties that there are facts which could lead to finding the defendant is a Louisiana resident who also has sufficient ties which connect the defendant to Georgia. The defendant is registered to vote in Georgia, not Louisiana. He owns a home in both states but operates his business out of a Louisiana office. His family and dependants (his wife and one adult son who lives in his house) have moved with him to Louisiana. The majority of the defendant's belongings, except for some immovable property which remains in Georgia, has been moved to Louisiana. The defendant's church activities, social activities and investments appear to be in Louisiana. While the defendant does have investments that attach him to Georgia, there is no evidence that the defendant retains affiliations with professional, religious or fraternal life of the former community in Georgia – in fact, defendant's doctors and all social and religious activities appear to be in Louisiana. The defendant claims a homestead exemption on his home in Georgia, but files Louisiana income taxes and claims his Baton Rouge address when filing his federal taxes. The defendant maintains a Georgia driver's license, but has explained why he has not applied for a Louisiana driver's license. On the other hand, both the

---

[26]*Id.*, citing *United States v. Scott*, 472 F.Supp. 107 (D.C. Ill. 1979).

Doc#46407                                    11

defendant's and his wife's personal vehicles are registered in the state of Louisiana and they are insured through a Baton Rouge insurance agent.

While there are several factors on both sides, the Court finds that the facts weigh more heavily towards the defendant being a resident of Louisiana.  The evidence reveals that the defendant conducts his personal and professional life in Louisiana.  The fact that his family now lives here with him in a home located in Baton Rouge which he has lived in for the past three years is also persuasive.  It is also clear that the defendant's daily business activities, his church and social activities, and all of his physicians are located here in Louisiana, which is significant.  The evidence regarding the defendant's day-to-day life activities confirms that he does, in fact, now reside in Louisiana with the intent to remain here for the indefinite future.  Thus, the parties in this case are not diverse, and the Court lacks subject matter jurisdiction to hear this case.

Therefore, it is ordered that plaintiff's motion for partial summary judgment is denied.  It is further ordered that this case is dismissed without prejudice for lack of subject matter jurisdiction under 28 U.S.C. § 1332.

Judgment shall be entered accordingly.

### III. Conclusion

For the reasons set forth above, the plaintiff's motion for partial summary judgment is denied. This case is dismissed for lack of subject matter jurisdiction.

IT IS SO ORDERED.

Baton Rouge, Louisiana, this 8 day of October, 2009.

```
                                    _____
                                        FRANK J. POLOZOLA
                                        MIDDLE DISTRICT OF LOUISIANA
```